Adam E. Polk (SBN 273000)
Simon Grille (SBN 294914)
Kimberly Macey (SBN 342019)
Reid Gaa (SBN 330141)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
kmacey@girardsharp.com
rgaa@ girardsharp.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RITA ADE, DARIUS HAMMONS, and JACQUELINE PAIGE individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VIKI, INC.,<br><br>Defendant. | Case No. 4:23-cv-02161-JST<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, on behalf of themselves and all others similarly situated, allege as follows against Defendant Viki, Inc. ("Viki"):

## INTRODUCTION

1. This is a consumer privacy action against Viki, a subsidiary of Rakuten Group, Inc., for disclosing its digital subscribers' identities and video-viewing preferences to Meta Platforms Inc. ("Meta"), in violation of the Video Privacy Protection Act ("VPPA" or "the Act") and the Unfair Competition Law ("UCL"). Meta owns the popular social networking platform Facebook.

2. The VPPA prohibits "video tape service providers," such as Viki, from knowingly disclosing a consumer's personally identifiable information ("PII")—in particular, "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider"—unless the consumer expressly consented to the disclosure in a standalone consent form.

3. Viki shares its members' personal information with Meta using a "Meta Pixel" or "Pixel"—a snippet of programming code that, once installed on a webpage, sends information to Meta. The Meta Pixel sends information to Meta in a data packet containing PII, such as the members' IP address, name, email, or phone number. Meta then stores this data on its own servers.

4. The information that Viki shares with Meta includes its member's unique Facebook ID ("FID") and the titles of prerecorded videos that the member requested or obtained. A member's FID is linked to their Facebook profile, which generally contains a wide range of demographic and other information about the member, including pictures, personal interests, work history, relationship status, and other details.

5. Viki discloses the member's FID and viewing content to Meta together in a single transmission. Because the member's FID uniquely identifies an individual's Facebook account, Meta— and any other ordinary person—can use the FID to quickly and easily locate, access, and view the member's corresponding Facebook profile. In simplest terms, the Pixel allows Meta to know what video content one of its members viewed on Viki's website.

6. Viki members do not consent to such sharing through a standalone consent form, as required by the VPPA. As a result, Viki violates the VPPA by disclosing this information to Meta.

7. Based on the facts set forth in this Complaint, Viki violated the VPPA and is liable for unjust enrichment. On behalf of a Class of similarly situated Viki members, Plaintiffs seek appropriate relief through this action.

## PARTIES

8. Plaintiff Rita Ade is a citizen and resident of Columbia, Maryland.

9. Plaintiff Darius Hammons is a citizen and resident of Lisle, Illinois.

10. Plaintiff Jacqueline Paige is a citizen and resident of Chicago, Illinois.

11. Defendant Viki, Inc. is a Delaware corporation headquartered at 800 Concar Drive, Suite 175, San Mateo, CA 94402.

## DIVISIONAL ASSIGNMENT

12. Pursuant to Civil L.R. 3-5(b), assignment to the San Francisco Division is appropriate under Civil L.R. 3-2(c) and Civil L.R. 3-2(d) because Viki is headquartered in San Mateo and a substantial part of the conduct at issue in this case occurred in San Mateo County.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction under 28 U.S.C. § 1331 based on Plaintiffs' claims under the Video Privacy Protection Act, 18 U.S.C. § 2710. The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

14. This Court also has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a proposed class action in which: (1) there are at least 100 Class members; (2) the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Defendant and at least one Class member are domiciled in different states.

15. This Court has personal jurisdiction over Viki because its principal place of business is within this District and it has sufficient minimum contacts in California to render the exercise of jurisdiction by this Court proper and necessary. Additionally, Viki's violations occurred, at least in part, in California, because Viki is headquartered in California, conducts business out of California, and at least one Plaintiff is from California. Viki's Terms of Use also designate the State and Federal Courts located in San Mateo County as the exclusive jurisdiction for any disputes.

16. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

### PLAINTIFF-SPECIFIC ALLEGATIONS

#### Rita Ade

17. Plaintiff Ade used her internet-connected device and the browsers installed on that device to visit and watch video content on Viki's website, https://www.viki.com, during the Class Period as defined herein.

18. Plaintiff Ade is a Viki subscriber and a Facebook user.

19. Plaintiff Ade has been a Viki member since approximately January of 2023. She provided Viki with her PII, including at least her name and email, when subscribing to Viki's services. Plaintiff Ade is therefore a subscriber to Viki under the VPPA.

20. Plaintiff Ade's Facebook profile includes her name and other personal details.

21. Plaintiff Ade watches prerecorded video content on viki.com approximately twice per week.

22. Plaintiff Ade visited Viki's website to request and watch prerecorded video content using the same browser that she uses to log in to Facebook, including while she was logged in to Facebook. She also uses the same device to request and watch prerecorded videos on Viki that she uses for Facebook.

23. Viki sent Plaintiff Ade's PII, including her FID, as well as the title of each prerecorded video she viewed, to Meta without obtaining her consent through a standalone consent form.

24. Plaintiff Ade values her privacy while web-browsing and watching videos.

25. Plaintiff Ade's viewing preferences constitute personal information of a private and confidential nature and are assets to which no third party has a presumptive right to access.

#### Darius Hammons

26. Plaintiff Hammons used his internet-connected device and the browsers installed on that device to visit and watch video content on Viki's website, https://www.viki.com, during the Class Period as defined herein.

27. Plaintiff Hammons is a Viki subscriber and a Facebook user.

3
FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-cv-02161-JST

28. Plaintiff Hammons has been a Viki member since approximately 2019. He provided Viki with his PII, including at least his name and email, when subscribing to Viki's services. Plaintiff Hammons is therefore a subscriber to Viki under the VPPA.

29. Plaintiff Hammons's Facebook profile includes his name and other personal details.

30. Plaintiff Hammons watches prerecorded video content on viki.com approximately three times per week.

31. Plaintiff Hammons visited Viki's website to request and watch prerecorded video content using the same browser that he uses to log in to Facebook, including while he was logged in to Facebook. He also uses the same device to request and watch prerecorded videos on Viki that he uses for Facebook.

32. Viki sent Plaintiff Hammons' PII, including his FID, as well as the title of each prerecorded video he viewed, to Meta without obtaining his consent through a standalone consent form.

33. Plaintiff Hammons values his privacy while web-browsing and watching videos.

34. Plaintiff Hammons' viewing preferences constitute personal information of a private and confidential nature and are assets to which no third party has a presumptive right to access.

### Jacqueline Paige

35. Plaintiff Paige used her internet-connected device and the browsers installed on that device to visit and watch video content on Viki's website, https://www.viki.com, during the Class Period as defined herein.

36. Plaintiff Paige is a Viki subscriber and a Facebook user.

37. Plaintiff Paige has been a Viki member since approximately 2019. She provided Viki with her PII, including at least her name and email, when subscribing to Viki's services. Plaintiff Paige is therefore a subscriber to Viki under the VPPA.

38. Plaintiff Paige's Facebook profile includes her name and other personal details.

39. Plaintiff Paige watches prerecorded video content on viki.com approximately one to two times per month.

40. Plaintiff Paige visited Viki's website to request and watch prerecorded video content using the same browser that she uses to log in to Facebook, including while she was logged in to

1  Facebook. She also uses the same device to request and watch prerecorded videos on Viki that she uses
2  for Facebook.
3      41.    Viki sent Plaintiff Paige's PII, including her FID, as well as the title of each prerecorded
4  video she viewed, to Meta without obtaining her consent through a standalone consent form.
5      42.    Plaintiff Paige values her privacy while web-browsing and watching videos.
6      43.    Plaintiff Paige's viewing preferences constitute personal information of a private and
7  confidential nature and are assets to which no third party has a presumptive right to access.

## COMMON ALLEGATIONS

**A.    Viki Disclosed Plaintiffs' and Class Members' Private Viewing Information to Meta.**

44.    Viki—a subsidiary of Rakuten Group, Inc., Japan's leading Internet services company—is "the world's leading platform for Asian entertainment and culture where millions of people discover and consume primetime shows and movies subtitled in more than 200 languages by our community of avid fans."[1]

45.    Viki's members can access a variety of video content on Viki's website, including both television shows and movies. Members can also rent pre-recorded video content from Viki's website.

46.    Viki provides and delivers prerecorded audiovisual content to its members.

47.    Plaintiffs requested and viewed prerecorded audiovisual content from Viki.

48.    When Plaintiffs and Class members requested and viewed prerecorded video content on Viki's website, Viki transmitted their viewing choices to Meta.

49.    Viki's transmission of viewing information to Meta includes the specific titles of video content viewed by members, as well as the member's FID—a string of numbers unique to each Facebook profile that personally identifies the member.

50.    Anyone who possesses an FID may use this number to quickly and easily locate, access, and view the corresponding Facebook profile by simply visiting www.facebook.com/[the user's FID]. Facebook profiles contain large amounts of personal information.

51.    A Facebook profile typically shows the Facebook user's name, gender, place of residence, career, educational history, a multitude of photos, and the content of the user's posts. This

---

[1] https://rakuten.wd1.myworkdayjobs.com/RakutenVikiSingapore (last visited May 2, 2023).

1  information may reveal even more sensitive personal information—for instance, posted photos may
2  disclose the identity of family members, and written posts may disclose religious preferences, political
3  affiliations, personal interests and more.

4      52.    Just as Meta can easily identify any individual on its Facebook platform with only their
5  unique FID, so too can any ordinary person who comes into possession of a FID. Facebook admits as
6  much on its website. Thus, equipped with a FID and the video content name and URL—all of which
7  Viki knowingly provides to Meta without appropriate consent from its members—any ordinary person
8  could determine the identity of the Viki member and the specific video or media content they viewed on
9  Viki's website.

10      53.    Viki transmits the FID and video title to Meta in a single transmission, through an
11  invisible tracking tool called a "Meta Pixel." A Meta Pixel is a snippet of a programming code that, once
12  installed on a webpage, sends information to Meta. This transmission occurs when a member views a
13  prerecorded video on Viki's website.

14      54.    The transmission is shown in the screenshots below:





55. As shown by the exemplar scenario in the screenshots above, when a Viki member visits a Viki webpage and requests a prerecorded video, the Pixel transmits both the title of the video and the member's FID (highlighted in the red boxes) to Meta.

56. The Pixel is an advertising tool that allows website owners to track visitor actions on their websites for purposes of sending the corresponding information to Meta; websites use the Pixel in hopes of better targeting their products and services on Facebook to interested consumers. Thus, a business such as Viki chooses to install the Pixel on its website in order to increase its profits.

57. According to Meta's website, the Pixel allows it "to match your website visitors to their respective Facebook User accounts" and that "[o]nce matched, we can tally their actions in the Facebook Ads Manager so you can use the data to analyze your website's conversion flows and optimize your ad campaigns."[2]

58. Viki knew that by installing the Pixel on its website, the Pixel would send Meta information identifying its members and their video-watching habits.

59. Meta's website explains that, to begin using the Meta Pixel, a business must first "install"

---

[2] https://developers.facebook.com/docs/meta-pixel/get-started (last visited May 2, 2023).

the Pixel "by placing the Meta Pixel base code on all pages of your website."³ Viki made the conscious decision to undertake this installation process.

60. Further demonstrating that Viki knowingly placed the Pixel in its website code, Meta's website states that "[d]evelopers and marketers can *optionally choose* to send information about" a visitor's activity on its website. (Emphasis added).⁴

61. Meta offers its Pixel tool to websites across the internet. As of January 2022, more than 30 percent of popular websites have an embedded Facebook Pixel.

62. Meta benefits from websites like Viki installing its Pixel. When the Pixel is installed on a business's website, the business has a greater incentive to advertise through Facebook or other Meta-owned platforms, like Instagram. In addition, even if the business does not advertise with Facebook, the Pixel assists Meta in building more fulsome profiles of its own users, which in turn allows Meta to profit from providing more targeted ads. The Pixel is installed on a variety of websites and, accordingly, provides Meta with information about its users' preferences, other distinguishing traits, and web-browsing activities outside of Meta-owned platforms.

63. Using the Meta Pixel likewise benefits Viki's business by improving its ability to promote its content and services to its members, thereby increasing its profits.

64. Through use of the Meta Pixel, Viki discloses to Meta the full name of each video a member watched, together with the member's FID, thus linking members' viewing content choices and preferences to their Facebook profiles. In other words, this single transmission connects a member's viewing content with their FID.

65. Viki violates and invades the privacy rights of members with its practice of sending their FIDs, together with their viewing content, to Meta. Plaintiffs and Class members neither knew of nor authorized, nor otherwise consented to, Viki's disclosure of their prerecorded video and video-services requests and their identities to Meta.

66. The VPPA requires that consent be obtained in a form "distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710.

---

³ *Id.*; https://www.facebook.com/business/tools/meta-pixel/get-started (last visited May 2, 2023).
⁴ https://developers.facebook.com/docs/meta-pixel (last visited May 2, 2023).

67. At no point were Plaintiffs or any other Viki member given a standalone consent form disclosing Viki's practices at issue and requesting member consent. Hence, no member consented to Viki's offending practice of sharing video preferences with third parties.

**B.    Plaintiffs and the Class Were Harmed by Viki's Privacy Invasions.**

68. Viki shared with Meta the personal information of Plaintiffs and Class members, including their video-viewing histories and associated FIDs, which they reasonably expected would be kept private.

69. The personal information Viki obtained from Plaintiffs and Class members constitutes valuable data in the digital advertising-related market for consumer information. Viki's wrongful acquisition and use of their personal and private information deprived Plaintiffs and Class members of control over that information, and prevented them from realizing its full value for themselves.

70. Viki's conduct caused economic harm to Plaintiffs and Class members, whose PII diminished in value when Viki made this information available to Meta.

71. Plaintiffs and Class members used Viki's website, and not another competitor's website, because they trusted that Viki's privacy practices comported with their privacy preferences.

72. Viki's practice of sharing members' personal information and prerecorded video content with Facebook without their consent, and its failure to disclose this practice, caused Viki to profit from advertising revenue it would otherwise not have received.

73. Plaintiffs' and Class members' experiences and injuries are consistent with and borne out by research showing that consumers prefer to transact with online retailers that better protect their privacy, and are willing to pay a premium to purchase goods and services from websites that afford greater privacy protection. *See* J. Tsai, S. Egelman, L. Cranor & A. Acquisiti [Carnegie Mellon Univ.], "The Effect of Online Privacy Information on Purchasing Behavior: An Experimental Study" (June 2007), Information Systems Research, Vol. 22 at 254–268, available at: https://www.researchgate.net/publication/220079706_The_Effect_of_Online_Privacy_Information_on_Purchasing_Behavior_An_Experimental_Study.

74. The harms described above are aggravated by Viki's continued retention and commercial use of Plaintiffs' and Class members' personal information, including their private video-viewing histories.

**TOLLING OF THE STATUTES OF LIMITATIONS**

75. All applicable statute(s) of limitations have been tolled by Viki's knowing and active concealment and denial of the facts alleged herein. Plaintiffs and Class members could not have reasonably discovered Viki's practices of sharing their personal viewing content and PII with Meta until shortly before this class action litigation commenced.

76. Viki was and remains under a continuing duty to disclose to Plaintiffs and Class members its practice of sharing personal viewing content and PII to Meta. As a result of the active concealment by Viki, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

**CLASS ACTION ALLEGATIONS**

77. Plaintiffs bring this lawsuit under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), and/or (c)(4) as representatives of the following Class and constituent Subclass:

> **Nationwide Class**: All persons in the United States who subscribed to Viki.com, viewed prerecorded video content on Viki.com, and used Facebook during the time Meta's Pixel was active on Viki.com.
>
> **California Subclass**: All persons in California who subscribed to Viki.com, viewed prerecorded video content on Viki.com, and used Facebook during the time Meta's Pixel was active on Viki.com.

78. The "Class Period" is from January 1, 2013 to the present.

79. Excluded from the Class are Defendant, its employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their respective court staff, the members of their immediate families, and Plaintiffs' counsel. Plaintiffs reserve the right to modify, change, or expand the Class definition based upon discovery and further investigation.

80. **Numerosity**: The Class consists of at least hundreds of thousands of individuals, making joinder impractical.

81. **Commonality and Predominance**: Common questions of law and fact exist with regard

to each of the claims and predominate over questions affecting only individual Class members. Questions common to the Class include:

    a.    Whether Viki's use of the Meta Pixel was without member consent or authorization;

    b.    Whether Viki obtained and shared or caused to be obtained and shared Plaintiffs' and Class members' personal information through use of the Meta Pixel, which Viki installed on its webpages;

    c.    Whether third parties obtained Plaintiffs' and Class members' personal information as a result of Viki's conduct described herein;

    d.    Whether Viki's conduct violates the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.*;

    e.    Whether Viki's acquisition and transmission of Plaintiffs' and Class members' personal information resulted in harm; and

    f.    Whether Viki should be enjoined from engaging in such conduct in the future.

82.    **Typicality**: Plaintiffs' claims are typical of the claims of the Class members in that Plaintiffs, like all Class members, have been injured by Viki's misconduct at issue—i.e., disclosing members' PII and viewing content to Meta without appropriate consent.

83.    **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, including privacy protection cases. Plaintiffs do not have any interests antagonistic to those of the Class.

84.    **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Viki to comply with applicable law. Moreover, because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and because of Viki's financial resources, Class members are unlikely to pursue legal redress individually for the violations detailed in this Complaint. A class action will allow these claims to be heard where they would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and

comprehensive supervision by a single court.

85. Class Certification is also appropriate under Rules 23(b)(1), (b)(2), and/or (c)(4) because:

- The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendants;

- The prosecution of separate actions by individual Class members would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests;

- Defendants have acted or refused to act on grounds generally applicable to the Class, making injunctive and corresponding declarative relief appropriate with respect to the Class as a whole; and

- The claims of Class members are comprised of common issues whose resolution in a class trial would materially advance this litigation.

**FIRST CAUSE OF ACTION**
**Violation of the Electronic Communications Privacy Act (Video Privacy Protection Act), 18 U.S.C. § 2710, *et seq.***
**(On Behalf of the Nationwide Class)**

86. Plaintiffs incorporate and reallege the above factual allegations by reference.

87. The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally-identifying information" concerning any consumer to a third-party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C. § 2710.

88. As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials."

89. Viki is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because it is engaged in the business of delivering audiovisual materials through its online platform—including the prerecorded videos that Plaintiffs viewed—which are similar to prerecorded video cassette tapes. Viki's

rental, sale, and delivery of video content affects interstate and foreign commerce.

90. As defined in 18 U.S.C. § 2710(a)(3), "personally identifiable information" is defined to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

91. Viki knowingly caused personal viewing information, including FIDs, concerning Plaintiffs and Class members to be disclosed to Meta. This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified each Plaintiff and each Class member to Meta as an individual who viewed Viki's video content, including the specific prerecorded video materials each such individual watched on Viki's website. This information allowed Meta to identify each Plaintiff and each Class members' specific individual video-viewing preferences and habits.

92. As defined in 18 U.S.C. § 2710(a)(1), a "consumer" means "any renter, purchaser, or subscriber of goods or services from a video tape service provider." As alleged above, Plaintiffs are subscribers to Viki's services providing video content to members on its website and viewed prerecorded videos provided on Viki's platform. Hence, Plaintiffs are "consumers" under this definition.

93. As set forth in 18 U.S.C. § 2710(b)(2)(B), "informed, written consent" must be (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, is either given at the time the disclosure is sought or is given in advance for a set period of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner. Viki failed to obtain informed, written consent under this definition.

94. Additionally, the VPPA creates an opt-out right for consumers in 18 U.S.C. § 2710(2)(B)(iii). The Act requires video tape service providers to "provide[] an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." Viki failed to provide an opportunity to opt out as required by the Act.

95. Viki was aware that the disclosures to Meta that were shared through the Pixel identified Plaintiffs and Class members. Viki also knew that Plaintiffs' and Class members' personal viewing content was disclosed to Meta because Viki programmed the Meta Pixel into its website code, knowing

that Meta would receive video titles and the member's FID when a member watched a prerecorded video.

96. By knowingly disclosing Plaintiffs' and Class members' personal viewing content, Viki violated Plaintiffs' and Class members' statutorily protected right to privacy in their prerecorded video-watching habits. *See* 18 U.S.C. § 2710(c).

97. As a result of the above violations, Viki is liable to Plaintiffs and Class members for actual damages related to their loss of privacy in an amount to be determined at trial or, alternatively, for "liquidated damages not less than $2,500 per plaintiff." 18 U.S.C. § 2710(c)(2)(A). Under the Act, Viki also is liable for reasonable attorney's fees, other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury and sufficient to prevent and deter the same or similar conduct by Viki in the future.

**SECOND CAUSE OF ACTION**
**Violation of California's Unfair Competition Law (the "UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of the Nationwide Class or Alternatively on Behalf of the California Subclass)**

98. Plaintiffs incorporate and reallege the above factual allegations by reference.

99. A nationwide class applying California law is appropriate given that Viki's Terms of Use contain a California choice of law provision, and Viki is headquartered in California and its misconduct originated in California.

100. The UCL proscribes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

**Unlawful**

101. A business practice is "unlawful" under the UCL if it violates any other law or regulation.

102. Viki's business acts and practices are unlawful because they violate the Video Privacy Protection Act as set forth above. Viki is therefore in violation of the "unlawful" prong of the UCL.

**Unfair**

103. Viki's conduct is unfair in violation of the UCL because it violates California's and the nation's legislatively declared public policy in favor of protection of consumer privacy. *See* S. Rep. No. 100-500 at 7-8 (1988) (finding that "the trail of information generated by every transaction that is now

recorded and stored in sophisticated record-keeping systems . . . create[s] privacy interests that directly affect the ability of people to express their opinions, to join in association with others, and to enjoy the freedom and independence that the Constitution was established to safeguard."); California Bill Analysis, A.B. 375 Assem. (June 27, 2017) (noting that "[t]he unregulated and unauthorized disclosure of personal information and the resulting loss of privacy can have devastating effects for individuals, ranging from financial fraud, identity theft, and unnecessary costs to personal time and finances, to the destruction of property, harassment, reputational damage, emotional stress, and even potential physical harm.").

104. Further, Viki's conduct is unfair because it is unethical, unscrupulous, offensive, and substantially injurious. The gravity of harm resulting from Viki's unfair conduct outweighs any potential utility therefrom. The disclosure of Plaintiffs' and Class members' personal information without their express consent raises significant privacy concerns, and any potential utility from these disclosures (such as increased Viki revenue due to more targeted advertising) is outweighed by their considerable harm to Plaintiffs and the Class.

105. Viki's unfair business practices include disclosing Plaintiffs' and Class members' FIDs and viewing content to Meta without authorization or consent, causing harm to Plaintiffs and Class members.

106. Viki actually and proximately caused harm to Plaintiffs and Class members in that, among other things, they suffered economic injury by overpaying for their subscriptions.

107. For these reasons, Viki is in violation of the "unfair" prong of the UCL.

108. Plaintiffs accordingly seek appropriate relief, including (1) restitution under the UCL; and (2) such orders or judgments as may be necessary to enjoin Viki from continuing its unfair, unlawful, and fraudulent practices. There is no adequate remedy at law that would provide redress to Plaintiffs and the Class or ensure that Viki will not engage in the same data practices in the future. Plaintiffs also seek reasonable attorneys' fees and costs under applicable law, including under California Code of Civil Procedure section 1021.5.

# THIRD CAUSE OF ACTION
## Unjust Enrichment
### (On Behalf of the Nationwide Class)

109. Plaintiffs incorporate and reallege the above factual allegations by reference.

110. Viki acted wrongfully by sharing members' FIDs and viewing content to Meta without their consent.

111. Viki's practice of sharing members' personal information and viewing content with Meta without proper consent, and its failure to disclose this practice, caused Viki to profit from advertisement revenue it would otherwise not have received.

112. Viki's retention of these ill-gotten gains is unjust and inequitable.

113. Plaintiffs, on behalf of themselves and the Class, accordingly seek restitution, restitutionary disgorgement, and all other appropriate relief permitted by the law of unjust enrichment, including reasonable attorneys' fees and costs. There is no adequate remedy at law that would provide redress to Plaintiffs and the Class or ensure that Viki will not deploy the same data practices in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully requests that the Court:

A. Certify this case as a class action, and appoint Plaintiffs as Class Representative and the undersigned attorneys as Class Counsel;

B. Enter judgment in favor of Plaintiffs and the Class;

C. Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiffs and Class members, including reformation of practices and an accounting and purging of wrongfully obtained personal information;

D. Award all actual, general, special, incidental, statutory, treble, punitive, liquidated, and consequential damages and/or restitution to which Plaintiffs and Class members are entitled;

E. Award disgorgement of monies obtained through and as a result of the wrongful conduct alleged herein;

F. Award Plaintiffs and Class members pre- and post-judgment interest as provided by law;

G. Enter such other orders as may be necessary to restore to Plaintiffs and Class members any money and property acquired by Defendant through its wrongful conduct;

H. Award Plaintiffs and Class members reasonable litigation expenses and attorneys' fees as permitted by law; and

I. Award such other and further relief as the Court deems necessary and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all issues triable as of right.

Dated: June 16, 2023  Respectfully submitted,

By: */s/ Simon S. Grille*
   Adam E. Polk (SBN 273000)
   Simon Grille (SBN 294914)
   Kimberly Macey (SBN 342019)
   Reid Gaa (SBN 330141)
   **GIRARD SHARP LLP**
   601 California Street, Suite 1400
   San Francisco, CA 94108
   Telephone: (415) 981-4800
   apolk@girardsharp.com
   sgrille@girardsharp.com
   kmacey@girardsharp.com
   rgaa@girardsharp.com

   *Attorneys for Plaintiffs*